IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CALVIN WATSON,**

    Plaintiff,

v.                                                             Civil Action No. **3:13CV746**

**R. L. SPILMAN,** *et al.,*

    Defendants.

**MEMORANDUM OPINION**

Calvin Watson, a Virginia prisoner proceeding *pro se*, filed this 42 U.S.C. § 1983[1] action in which he alleges Defendant Rebecca L. Spilman, a police officer for the City of Manassas, violated his rights under the Fourth[2] and Fourteenth Amendments[3] and slandered his name. The matter is before the Court on Officer Spilman's Motion for Summary Judgment and Motion to Dismiss. Watson has responded. For the reasons set forth below, the Motion for Summary Judgment and Motion to Dismiss Claim Five will be GRANTED.

---

[1] Section 1983 provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

## I. SUMMARY OF CLAIMS

The Court generously construes the Complaint to argue entitlement to relief based upon the following claims:

Claim One: Officer Spilman falsely arrested Watson for public intoxication in violation of the Fourth and Fourteenth Amendments.

Claim Two: Officer Spilman illegally searched Watson in violation of the Fourth and Fourteenth Amendments.

Claim Three: Officer Spilman falsely imprisoned Watson for public intoxication in violation of the Fourth and Fourteenth Amendments.

Claim Four: Officer Spilman violated Watson's due process rights of the Fourteenth Amendment "by charging him with threat for stateing [sic] he was going to file legal action." (Compl. 4.)[4]

Claim Five: Officer Spilman slandered his name by suggesting that Watson was a homosexual because he had an "Angry Birds" nail kit in his bag.

Watson seeks monetary damages.

## II. STANDARD OF REVIEW

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation

---

[4] The Court employs the pagination assigned by the CM/ECF docketing system for quotations from and citations to Watson's submissions.

marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of her Motion for Summary Judgment, Officer Spilman submits: (1) her own affidavit (Mem. Supp. Mot. Summ. J., Attach. 1 (ECF No. 12-1) ("Spilman Aff.")); (2) the affidavit of Jeffrey Shubert, a police officer for the City of Manassas (*id.* Attach. 2 (ECF No. 12-2) ("Shubert Aff.")); (3) the affidavit of Trey Cram, a police officer for the City of Manassas (*id.* Attach. 3 (ECF No. 12-3) ("Cram Aff.")); (4) the affidavit of Jeremy Wyche, an intake officer at the Prince William–Manassas Regional Adult Detention Center (*id.* Attach. 4 (ECF No. 12-4) ("Wyche Aff.")); and (5) various state court records (*id.* Ex. A–G).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Watson submitted an unsworn Response Memorandum in Opposition (ECF No. 19) and two unsworn documents entitled "Affidavit Response[s]" to the affidavits of Shubert and Cram. (ECF Nos. 24–25). Watson's "Affidavit Response[s]" are not admissible for summary judgment because their content is not sworn to under penalty of perjury and there is no indication that the notary administered an oath to Plaintiff. *See McCoy v. Robinson*, No. 3:08CV555, 2010 WL 3735128, at *2 (E.D. Va. Sept. 22, 2010) (alterations in original) ("'[M]erely notarizing [a] signature does not transform a document into [an] affidavit that may be used for summary judgment purposes.'" (quoting *Nissholwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306–07 (5th Cir. 1998))). Watson's submissions, including his Complaint and Response in Opposition, fail to constitute admissible evidence because Watson failed to swear to the contents of his submissions under penalty of perjury. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Watson.

### III.   UNDISPUTED FACTS

On August 7, 2013, Officer Spilman was engaged in traffic patrol at the intersection of Beech Place and George Street in Manassas, Virginia. (Spilman Aff. ¶ 2.) At 1900 hours, she observed Watson wearing sweatpants, and no shirt, sweating profusely, and walking down the middle of the road on Beech Place. (*Id.* ¶¶ 3–4.) Officer Spilman observed that "[h]e appeared to be speaking to himself and was punching the air. He appeared to be in a daze." (*Id.* ¶ 3.) Spilman exited her car and asked Watson if she could speak with him. (*Id.* ¶ 5.) Simultaneously,

Officer Shubert, who had been patrolling a nearby neighborhood, arrived to provide back-up because the neighborhood "[was] known as a high crime area" and in case the disturbance escalated. (*Id.* ¶ 7; Shubert Aff. ¶ 2.) Officer Shubert also observed Watson speaking to himself, punching at the air, appearing to be in a daze, and walking down the middle of the road. (Shubert Aff. ¶ 3.) Watson stopped and "immediately stated 'I am not doing anything wrong. I am not being violent.'" (Spilman ¶ 6.) Without Officer Spilman's prompting, Watson placed his hands on the hood of a parked vehicle "as if expecting to be searched." (*Id.* ¶ 6; Shubert Aff. ¶ 6.) Neither officer touched or searched him at that time. (Spilman Aff. ¶ 6; Shubert Aff. ¶ 6.))

Officer Spilman instructed Watson that he needed to stop walking in the middle of the road. (Spilman Aff. ¶ 8.) Watson denied walking in the middle of the road, and stated "that he was walking 'with the kids.'" (*Id.* ¶ 9.) Officer Spilman observed no children walking with Watson at any time. (*Id.*) Officer Spilman asked Watson why he was sweating so much, as sweat was pouring off his body, but he did not appear or sound out of breath. (Spilman Aff. ¶ 10; Shubert Aff. ¶ 7.) The officers noted that "the amount of sweat did not appear to be consistent with the heat." (Shubert Aff. ¶ 7.) Officer Spilman asked where he was coming from and headed to and asked for identification. (Spilman Aff. ¶ 11.) Watson had no identification and informed the officers "that he had been working out in the park" (Spilman Aff. ¶ 12; Shubert Aff. ¶ 8) and "playing with 'the kids.'" (Spilman Aff. ¶ 12.) Both officers, and Officer Cram who had arrived as back up, noted that Watson's responses to questions were unusually delayed, his pupils were constricted, he was swaying back and forth, and his profuse sweat smelled of ether. (*Id.* ¶¶ 13–16; Shubert Aff. ¶¶ 9–12; Cram Aff. ¶¶ 6–8.) The officers noted that Watson's "demeanor changed erratically throughout the conversation, from highly agitated to calm, from yelling to calm, for no particular reason." (Spilman Aff. ¶ 16; Shubert Aff. ¶ 13; Cram Aff. ¶ 9.)

At one point, Watson "pushed himself off the vehicle and faced [the officers] with his fists tightly clenched." (Spilman Aff. ¶ 16.) Based upon their training and experience, Officers Spilman, Shubert, and Cram aver that the characteristics Watson exhibited were common side-effects and indicators of the use of phencyclidine, known as PCP. (Spilman Aff. ¶ 17; Shubert Aff. ¶ 14; Cram Aff. ¶ 10.)[5]

Officer Spilman placed Watson under arrest for public intoxication and read Watson his *Miranda v. Arizona*, 384 U.S. 436 (1966) rights. (Spilman Aff. ¶ 18; Cram Aff. ¶¶ 11–12.) Given Watson's "irate and unpredictable behavior," Officers Spilman and Shubert placed Watson in handcuffs. (Shubert Aff. ¶ 16.) Officers Spilman and Cram searched Watson's person and his backpack in his presence for objects that could endanger Officer Spilman's safety or that were not allowed at the detention center, and found none. (Spilman Aff. ¶ 20.) Officer Spilman placed Watson in the back of her vehicle and took him to the Prince William–Manassas Regional Adult Detention Center. (*Id.* ¶ 21.)

During the drive, Watson's behavior remained erratic, and he alternated between being happy and jovial and screaming obscenities. (*Id.* ¶ 22.) Inside the detention center, Officer Spilman took Watson before the magistrate so she could swear a warrant for his arrest. (Spilman Aff. ¶ 23.) Watson's behavior remained erratic and he frequently interrupted the magistrate and Officer Spilman. (*Id.*) The magistrate told Watson that he would be released on his own recognizance without bond once he was no longer in an intoxicated state. (*Id.* ¶ 24; Mem. Supp. Mot. Summ. J. Ex. A, at 3; *id.* Ex. E, at 4, 8.) The magistrate found that probable cause existed

---

[5] Watson first alleges that he was not intoxicated but had done "about 500 push ups." (Compl. 5.) In his Response in Opposition, Watson alleges that "he'd been playing basketball with kids on the . . . area playground," "was just punching in the air," and "was litely [sic] jogging shady box to stay fit." (Resp. Opp'n 2 (capitalization corrected).)

6

to issue a warrant for public intoxication, a misdemeanor. (*Id.* ¶ 25; Mem. Supp. Mot. Summ. J. Ex. E, at 1.)

Jeremy Wyche, an intake officer, heard Watson screaming obscenities in the magistrate's office through a large, heavy security door. (Wyche Aff. ¶¶ 5–6.) Wyche entered the magistrate's office to make sure everyone was okay. (*Id.* ¶ 7.) Wyche noted that Watson was sweating profusely, yelling loudly, and seemed irritated. (*Id.* ¶ 8.) While Officer Spilman led Watson to the booking area, Watson "was still acting belligerently toward Officer Spilman; he was yelling loudly and frequently cussing." (*Id.* ¶¶ 11–12.) Watson began to yell about suing Prince William County for arresting him, but Officer Spilman ignored him. (*Id.* ¶ 13; Spilman Aff. ¶¶ 27–28.) Watson then shouted: "'I'M GOING TO BURN ALL OF MOTHER FUCKING PRINCE WILLIAM COUNTY AND Y'ALL IN IT!'" (Spilman Aff. ¶ 29; Wyche Aff. ¶ 14.) Officer Spilman took Watson back before the magistrate, explained the incident to the magistrate, and swore out a complaint for his statement. (Spilman Aff. ¶ 31.) Watson admitted that he made the statement in front of the magistrate. (*Id.* ¶ 32.) The magistrate found probable cause existed for a second warrant to issue for threat to burn public property, a felony. (*Id.* ¶ 33; Mem. Supp. Mot. Summ. J. Ex. F, at 1.) Wyche then booked Watson, and led him back to a cell, where Watson continued to yell, sweat, and bang on the cell door. (Wyche Aff. ¶¶ 16–17.)

Due to the issuance of the second warrant, Watson remained incarcerated with the option for pretrial release with bail. (Mem. Supp. Mot. Summ. J. Ex. F, at 5; *id.* Ex. G, at 1.) Watson had counsel appointed, and on September 3, 2013, the General District Court found him not guilty of public intoxication. (*Id.* Ex. E, at 2.) The Court dismissed the threat to burn public property count. (*Id.* Ex. F, at 2.)

## IV. ANALYSIS

Officer Spilman asks this Court to dismiss Claims One, Two, and Three because probable cause existed to arrest Watson, search Watson incident to arrest, and imprison him after a warrant issued. (Mem. Supp. Mot. Summ. J. 10–13.) Officer Spilman also argues that Watson states no due process claim for the failure to burn charge (*id.* at 13–15), and that Watson fails to state a claim for slander. (*Id.* at 15–16.) Finally, Officer Spilman also asserts entitlement to qualified immunity.[6] (*Id.* at 15–17.)

### A. No Fourth Amendment Violation[7]

Actions brought under § 1983 based upon claims of false arrest and false imprisonment, "are properly analyzed as unreasonable seizures under the Fourth Amendment." *McPhearson v. Anderson*, 874 F. Supp. 2d 573, 580 (E.D. Va. July 6, 2012) (citation omitted) (internal quotation marks omitted). To establish an unreasonable seizure under the Fourth Amendment, Watson must demonstrate that Officer Spilman arrested him for public intoxication without probable cause. *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002) (citations omitted). The Court finds probable cause to arrest when "'at the time the arrest occurs, the facts and circumstances within

---

[6] "When qualified immunity is asserted, the reviewing court should usually first ask whether the right was violated on the facts [established at summary judgment], and then determine whether that right was 'clearly established.'" *LeSueur-Richmond Slate Corp. v Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012) (citing *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009)). For the reasons set forth below, Watson fails to establish a violation of his rights under the Fourth Amendment or Fourteenth Amendment. Thus, the Court need not address qualified immunity.

[7] The Court notes that Watson also claims that the arrest, search, and detention violated his Fourth and Fourteenth Amendment rights. The Fourth Amendment is applicable to the states through the Fourteenth Amendment, and the Court presumes he cites the Fourteenth Amendment for this purpose. Nevertheless, to the extent he suggests a separate violation of his substantive due process rights for arrest without probable cause, he states no claim for relief. Such a claim must be brought under the Fourth Amendment. *Albright v. Oliver*, 510 U.S. 266, 274–75 (1994).

the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing and offense.'" *United States v. Garcia*, 848 F.2d 58, 59–60 (4th Cir. 1988) (citing *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984)). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed." *Brown*, 278 F.3d at 367 (citing *Wong Sun v. United States*, 371 U.S. 471, 479 (1963)). The probable cause standard requires neither "that the officer's belief be more likely true than false," *Anderson v. Caldwell Cty. Sheriff's Office*, 524 F. App'x 854, 861 (4th Cir. 2013) (citation omitted), nor that the officer have evidence sufficient to convict the criminal defendant. *Brown*, 278 F.3d at 367–68 (citation omitted). Moreover, once a neutral and detached magistrate deems an arrest reasonable by finding that probable cause exists for the arrest, the continuing seizure of the criminal defendant is also reasonable. *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 184 (4th Cir. 1996) (citing *Taylor v. Waters*, 81 F.3d 429, 436 (4th Cir. 1996)).

To prove no probable cause existed for his arrest, Watson must demonstrate that no reasonable officer could conclude that he was publicly intoxicated. Watson has failed to do so. Section 18.2-388 of the Virginia Code states in relevant part: "If any person . . . is intoxicated in public, whether such intoxication results from alcohol, narcotic drug or other intoxicant or drug of whatever nature, he shall be deemed guilty of a Class 4 misdemeanor." Va. Code Ann. § 18.2-388 (West 2014).[8] Under Virginia law, "intoxication" means "a condition in which a person has [consumed enough of an intoxicant] to observably affect his manner, disposition,

---

[8] Virginia law authorizes custodial arrests for public intoxication under this section. *See Deavers v. Spotsylvania Cty. Sheriff's Dep't*, No. 3:14CV365–HEH, 2014 WL 2993445, at *1 n.2 (E.D. Va. July 2, 2014) (citations omitted)

9

speech, muscular movement, general appearance or behavior." *McGhee v. Commonwealth*, 701 S.E.2d 58, 60 (Va. 2010) (quoting Va. Code Ann. § 4.1–100).

The undisputed facts demonstrate that Officer Spilman observed Watson exhibiting indicia of physical impairment. Officer Spilman observed Watson walking in the middle of the road, speaking to himself, punching the air, acting as if in a daze, and sweating profusely. Officer Spilman instructed Spilman to stop walking in the middle of the road, and Watson told her he was walking "with the kids" although he was alone. (Spilman Aff. ¶ 9.) Watson also said he had been working out in the park, playing with "the kids." (*Id.*) Three officers averred that Watson's responses to questions were unusually delayed, his pupils were constricted, his body was swaying, he was profusely sweating despite not sounding or appearing out of breath, and he smelled of ether. Watson exhibited erratic behavior throughout the conversation with Officer Spilman and fluctuated between highly agitated and yelling and calm. Based on her experience and training as an officer, Officer Spilman believed Watson was intoxicated from ingestion of phencyclidine (PCP) and she arrested him for public intoxication.

In light of the foregoing circumstances, Officer Spilman had probable cause to arrest Watson for public intoxication. Thus, he fails to demonstrate a Fourth Amendment violation for false arrest or false imprisonment.[9] *See e.g.*, *McGhee*, 280 S.E.2d at 60 (concluding probable cause to arrest for public intoxication existed where officer observed defendant had strong odor of alcohol on breath, bloodshot eyes, and slurred speech); *Clarke v. Commonwealth*, 527 S.E.2d 484, 489 (Va. App. 2000) (concluding probable cause to arrest for public intoxication where

---

[9] In his Complaint, Watson states that Officer Spilman illegally stopped and detained him. (Compl. 6.) In his Response in Opposition, Watson admits that an officer may stop and briefly detain a person for investigative purposes. (Resp. Opp'n 5 (citing *United States v. Perrin*, 45 F.3d 869, 871–72 (4th Cir. 1995); *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Any Fourth Amendment claim about his initial stop and detention lacks merit.

10

officer detected odor of alcohol, observed blood shot eyes, and noted erratic speech). Accordingly, Claims One and Three lack merit and will be DISMISSED.

Because probable cause existed for the arrest, Officer Spilman's search of Watson's person and backpack were authorized searches incident to lawful arrest. *See Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979) ("The fact of a lawful arrest, standing alone, authorizes a search." (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973))); *United States v. Currence*, 446 F.3d 554, 556–57 (4th Cir. 2006). Thus, Claim Two lacks merit and will be DISMISSED.

## B.  No Due Process Violation

In Claim Four, Watson argues that Officer Spilman violated Watson's due process rights of the Fourteenth Amendment "by charging him with threat for stateing [sic] he was going to file legal action." (Compl. 4.) Watson contends that he only threatened to burn Prince William legal officials in court. (*See* Resp. Opp'n 4–7.) Watson fails to demonstrate that Officer Spilman violated his due process rights.

Substantive due process protects individuals from government action that is so arbitrary that no procedural protection can render it fair. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). The common rubric of a substantive due process violation is that it "shocks the conscience." *Waybright v. Frederick Cnty.*, 528 F.3d 199, 204–05 (4th Cir. 2009). First, Watson has no substantive due process right to make threatening remarks. *Cf. D.F. ex rel Finkle v. Bd. of Educ. of Syosset Cent. School Dist.*, 386 F. Supp. 2d 119, 127 (E.D.N.Y. 2005) (concluding that decision to suspend student for threatening and inappropriate written statements was within defendant's discretion and failed to amount to a substantive due process violation). Moreover,

Officer Spilman's actions in swearing out a warrant for Watson's arrest based on his threatening statements fail to shock the conscience.

Watson also fails to allege facts indicating that Officer Spilman violated his procedural due process rights. The Due Process Clause applies only when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). Where government action affects a protected liberty interest, the second step is to determine "what process is due" under the circumstances. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Watson fails to identify what liberty interest Officer Spilman deprived him of when she swore out the warrant for his arrest in front of the magistrate. Watson also fails to identify any process that Officer Spilman deprived him of when she obtained the arrest warrant. Claim Four lacks merit and will be DISMISSED.

### C. Slander (Defamation)

In Claim Five, Watson argues that Officer Spilman committed slander, or under Virginia law, the state law tort of defamation. *See Jafari v. Old Dominion Transit Mgmt. Co.*, 913 F. Supp. 2d 217, 223 (E.D. Va. 2012) (citation omitted).[10] Watson claims that when Officer Spilman found an "Angry Birds" nail kit in his back pack she stated sarcastically, "Angry Birds, Mr. Watson?" (Compl. 6.) Watson argues that her query suggested that he was gay. (*Id.*)

---

[10] "In a written format, defamation is usually termed libel, while spoken defamation, not reduced to writing, is slander." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005) (citing *MacPherson v. Green*, 87 S.E.2d 785, 789 (Va. 1955)). However, in Virginia, both libel and slander are encompassed in the cause of action for defamation. *See Harnois v. Lamont*, No. CL–4434, 2011 WL 8964938, at *2 (Va. Cir. Ct. Nov. 4, 2011); *see also Jafari*, 913 F. Supp. 2d at 223 (citation omitted) ("Virginia law, which governs here, does not distinguish between written defamation (libel) and oral defamation (slander).") Accordingly, hereinafter, the Court refers to Watson's claim for slander as a claim for defamation.

12

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the

plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

To state a claim of defamation in Virginia, Watson must allege facts that demonstrate the "'(1) publication of (2) an actionable false statement with (3) the requisite intent.'" *Jafari*, 913 F. Supp. 2d at 223 (quoting *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005)). "To be actionable, the statement must be not only false, but also defamatory, that is, it must tend[ ] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (alteration in original) (citation omitted) (internal quotation marks omitted). "Merely offensive or unpleasant statements are not defamatory." *Id.*

Watson fails to satisfy the elements for defamation. Officer Spilman made no apparent false statement when she allegedly asked, "Angry Birds, Mr. Watson?" (Compl. 6.) Watson states he had an Angry Birds nail set in his back pack. (*See id.*) Additionally, no reasonable trier of fact would find that the query tended to "harm the reputation of [Watson] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Chapin*, 993 F.2d at 1092 (citation omitted). Moreover, Officer Spilman made the statement to Watson alone, not to any third party. Thus, Watson fails to satisfy the publication element. *See,*

*e.g., Ortiz v. Panera Bread Co.*, No. 1:10CV1424, 2011 WL 3353432, at *4 (E.D. Va. Aug. 2, 2011) ("Publication occurs when an actionable statement is transmitted "to some third person so as to be heard and understood by such person."" (quoting *Thalhimer Bros., Inc. v. Shaw*, 159 S.E.2d 87, 90 (Va. 1931))). Watson fails to state a claim for defamation. Officer Spilman's Motion to Dismiss Claim Five will be GRANTED.

## V. CONCLUSION

Officer Spilman's Motion for Summary Judgment will be GRANTED. Officer Spilman's Motion to Dismiss Claim Five will GRANTED and the remainder of the Motion to Dismiss will be DENIED AS MOOT. The action will be DISMISSED WITH PREJUDICE.

An appropriate Order shall issue.

Date: 8/5/14
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge